SCOTT CHAMBERLAND ET AL. *v.* JOHN
LABONTE ET AL.
(AC 25799)

Schaller, Harper and Peters, Js.

Argued October 26, 2006—officially released February 6, 2007

*Donald R. Beebe*, with whom on the brief was *David C. Warner*, for the appellants (plaintiffs).

*David S. Williams*, for the appellee (named defendant).

*Opinion*

PETERS, J. General Statutes § 31-293a creates an exception to the general rule that workers' compensation benefits provide the exclusive remedy for an employee injured by a fellow employee.[1] Under this

---

[1] General Statutes § 31-293a provides in relevant part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. For purposes of this section, contractors' mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, gener-

statutory exception, an injured coworker may pursue a common-law action if "the action is based on the fellow employee's negligence in the operation of a motor vehicle . . . ." General Statutes § 31-293a. In this case, we must decide whether "operation of a motor vehicle" encompasses the negligent activation of a hydraulic system to move garbage in the back of a stationary garbage truck. Concluding, in light of the totality of the circumstances, that the truck was not being "operated," the trial court granted the fellow employee's motion for summary judgment. The injured employee has appealed. We affirm the judgment of the trial court.

As part of a multicount amended complaint filed on November 10, 2003, the plaintiff Scott Chamberland[2] alleged that the defendant John LaBonte had negligently operated a garbage truck so as to make the body of the truck "suddenly jerk up and out" over a garbage pit so that the plaintiff was forced to "jump onto a concrete platform," which resulted in injuries and damages. The defendant filed a motion for summary judgment based on his contention that the § 31-293a motor vehicle

ators, air compressors, drills or other similar equipment designed for use principally off public roads are not 'motor vehicles' if the claimed injury involving such equipment occurred at the worksite on or after October 1, 1983 . . . ."

[2] Other counts included a second claim against John LaBonte for loss of consortium by Sharon Chamberland and claims of negligence against Arthur Roberts, doing business as Merchant & Farmers Transportation, which employed both the plaintiff Scott Chamberland and LaBonte. Scott Chamberland and Sharon Chamberland also filed claims of common-law negligence and statutory negligence against the operators of the incinerator, Wheelabrator Environmental Systems, Inc., and Riley Energy Systems of Lisbon Corporation, where the accident occurred. Because Merchant & Farmers Transportation had paid workers' compensation benefits to Scott Chamberland, it was allowed to intervene to obtain reimbursement for these benefits.

This appeal concerns only the first two counts against LaBonte. See Practice Book § 61-3. For convenience, we refer to Scott Chamberland as the plaintiff and to LaBonte as the defendant.

exception did not apply to his operation of external controls on the stationary garbage truck. The trial court granted the motion, and the plaintiff has appealed.

The relevant facts as stated in the trial court's memorandum of decision are undisputed. On June 5, 1999, the plaintiff and the defendant "were employed by Merchant & Farmers Transportation. Immediately prior to the accident, the defendant . . . drove [a] garbage truck to the incinerator facility and backed it up adjacent to a garbage pit where the refuse in the body of the truck was to be dumped. The plaintiff . . . was riding in the truck with [the defendant]. The defendant left the motor of the truck running, placed the transmission in neutral, engaged the maxibrakes to prevent movement of the truck during the dumping process and activated the power takeoff switch. The power takeoff switch allowed the hydraulic pump and system to be powered from the truck's motor. The hydraulic system is not used to move the truck forward or backward on the roadway, but provides power to a blade that clears the contents of the hopper into the body of the truck, to open the hopper at the back of the truck and to operate a ram in the body of the truck. The ram pushes the collected garbage out of the back of the truck.

"The defendant . . . then exited the driver's side door, and the plaintiff, his fellow employee, exited the passenger's side door of the truck. Both parties proceeded to the back of the truck to uncouple the hopper from the body of the truck. Uncoupling the hopper enables the hydraulic system to lift the hopper and open up the back of the truck.

"The defendant uncoupled the hopper on the driver's side of the truck and then proceeded toward the front of the truck. He stopped just behind the cab of the truck where the controls for the hydraulic system that lifts the hopper and operates the ram are located. The

plaintiff, on the passenger's side of the truck, uncoupled the hopper from the body of the truck and then grabbed a lever to clear the hopper of the garbage collected at the last stop before the truck arrived at the incinerator.

"While the plaintiff was holding the lever to clear the hopper, the defendant, without checking for the plaintiff's whereabouts, pulled a lever that raised the hopper of the truck. At that time, the plaintiff was holding on to a lever on the hopper. The plaintiff was thrust out and up into the air over the garbage pit. He then jumped from the lever on the hopper to the ground and was injured."

In its decision granting the defendant's motion for summary judgment, the trial court made two significant rulings with respect to the applicability of § 31-293a. It agreed with the plaintiff that the garbage truck was a motor vehicle for the purposes of this section. Nonetheless, it agreed with the defendant that he was not engaged in the "operation of a motor vehicle" when the plaintiff was injured. The plaintiff's appeal challenges the validity of the second ruling.

Well established principles govern our review of the plaintiff's claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . [B]ecause our resolution of the plaintiff's claim requires us to construe § 31-293a as it applies to a particular factual scenario, our review

of that issue of law is plenary." (Citation omitted; internal quotation marks omitted.) *Colangelo* v. *Heckelman*, 279 Conn. 177, 182, 900 A.2d 1266 (2006).

The plaintiff's appeal challenges the trial court's decision to grant the motion for summary judgment on two grounds. He claims that the court improperly (1) found that there was no factual dispute about the mobility of the truck at the time of the accident and (2) concluded that the defendant was not engaged in "the operation of a motor vehicle" at the time of the accident. We are not persuaded by either claim.

I

It is common ground that, to grant the defendant's motion for summary judgment, the trial court had to find that there were no disputed issues of material fact. *Colangelo* v. *Heckelman*, supra, 279 Conn. 182. The defendant's motion was predicated on his claim that, even if a garbage truck is a motor vehicle for the purposes of § 31-293a when it is being driven on a public road, it was not being "operated" as a motor vehicle at the time when the accident occurred at the incinerator facility because it was then stationary.

It is undisputed that, at the incinerator, the defendant placed the transmission of the garbage truck in neutral and engaged the maxibrakes to prevent movement of the truck during the dumping process. The plaintiff, nonetheless, argues that there is a factual issue about whether the truck was then being "operated" because, according to the affidavit of his expert witness, Irving U. Ojalvo, the dump truck was so engineered that it could be moved "forward or backward by its own mechanical power while the truck is dumping garbage or emptying the hopper."

The trial court expressly addressed the parties' disagreement about whether the garbage truck itself could

move while performing lifting and emptying functions. It observed that the defendant, in his affidavit, had stated that a garbage truck cannot move from a stationary position when the maxibrakes are applied and the power takeoff is engaged. Arthur Roberts, the employer of both parties, similarly stated in his affidavit that the truck itself could not be driven or moved while the power takeoff switch is engaged. Furthermore, the court noted that, in the plaintiff's deposition, he had acknowledged that the garbage truck typically did not move while the parties were recycling or dumping garbage.

In light of this record, the court attached no significance to Ojalvo's opinion that it would be possible for the garbage truck to be driven even when the power takeoff switch is activated and the maxibrakes are engaged. Whatever the merits of the expert's hypothetical opinion might be in the abstract, the court found that his opinion had no probative force in view of the fact that, in this case, "the mechanical mechanism causing the plaintiff's injuries in this case is clear and undisputed. The defendant had immobilized the garbage truck by engaging the maxibrakes and placing the transmission in neutral." Only after the truck had been immobilized did the defendant activate the power takeoff switch to power the hydraulic system. It was the hydraulic system that allowed the defendant and the plaintiff to operate the hopper and ram functions outside of the cab of the truck. After both parties had gotten out of the cab, the defendant pulled a lever located on the exterior part of the truck. "It was at this time that the plaintiff's injuries occurred. The moving part of the truck that set the stage for the plaintiff's injuries was the swing upward of the hopper from the back of the truck. Any coincidental movement of the wheels while the parties were outside of the cab undoubtedly resulted from the operation of the truck's lifting or dumping

functions, rather than the operation (or driving) of the vehicle itself."[3]

The plaintiff takes issue with the trial court's decision on two grounds. Neither is persuasive.

The plaintiff first argues that the trial court improperly relied on the affidavits describing the operation of the garbage truck that were filed by or on behalf of the defendant. According to the plaintiff, these affiants did not have the credentials or expertise to make the statements cited by the court. Although the plaintiff raised this issue in his memorandum in opposition to the defendant's motion for summary judgment, he has not documented when and where the issue was addressed by the trial court. In the absence of a motion to strike the affidavit; see *Zbras* v. *St. Vincent's Medical Center*, 91 Conn. App. 289, 293, 880 A.2d 999, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005); *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 569 n.3, 636 A.2d 1377 (1994); we decline to review the plaintiff's challenge on appeal.

Alternatively, the plaintiff maintains that the trial court was required to accept the view of his expert witness that the garbage truck could have been driven even when the maxibrakes were engaged. We disagree with the plaintiff's characterization of the court's ruling. The court properly determined that the expert's opinion about the technical capabilities of the truck under other circumstances did not raise an issue of fact about whether, under the circumstances of this case, the truck

---

[3] To the extent that the expert witness purported to express his view of the applicability of § 31-293a to the facts of this case, the trial court rejected these observations as improper efforts to proffer legal conclusions that invaded the province of the court and did not create issues of fact. See Conn. Code Evid. § 7-3. The trial court did not abuse its discretion in so ruling despite the expert witness' representation that his views were based on his personal knowledge and expertise. See *Forte* v. *Citicorp Mortgage, Inc.*, 90 Conn. App. 727, 736, 881 A.2d 386 (2005).

was stationary at the time of the accident that injured this plaintiff.

In light of this record, we are persuaded that the plaintiff has failed to demonstrate that there were disputed material issues of fact. The court thus had the authority to decide whether to grant the defendant's motion for summary judgment as a matter of law.

## II

With respect to the merits of the trial court's decision to grant the defendant's motion for summary judgment, the plaintiff challenges the validity of the court's determination that § 31-293a was inapplicable because the defendant was not engaged "in the operation of a motor vehicle" when he was using the lifting and dumping functions of his garbage truck. The court held that the defendant's conduct did not fall within the ambit of the statute for two independent reasons: (1) the plaintiff's injuries resulted from "special hazards" attributable to his workplace; see *Dias* v. *Adams*, 189 Conn. 354, 456 A.2d 309 (1983); *Fields* v. *Giron*, 65 Conn. App. 771, 783 A.2d 1097, cert. denied, 258 Conn. 936, 785 A.2d 230 (2001); and (2) his injuries were not caused by the defendant's driving the garbage truck on a public road but by his use of an external lever to operate a hopper that was not itself suitable for operation on a public road. The plaintiff challenges the validity of each of these legal conclusions. Because of subsequent case law, we agree with the plaintiff that the court's first reason cannot be sustained. We nonetheless conclude that the court's second reason continues to have validity and suffices to support the judgment in favor of the defendant.

Subsequent to the filing of the plaintiff's appeal, our Supreme Court decided *Colangelo* v. *Heckelman*, supra, 279 Conn. 177, in which it reexamined the case law construing § 31-293a. In light of a legislative amendment

of § 31-293a in 1983, the Supreme Court rejected the view that § 31-293a liability is subject to a "general exception for accidents that bear a distinct relationship to the special hazards of the workplace." Id., 182. Accordingly, it expressly overruled this court's decision in *Fields*. Id., 190–93. It follows that the trial court's reliance on *Fields* cannot be sustained.

The plaintiff argues that our Supreme Court's analysis of § 31-293a in *Colangelo* also demonstrates that the trial court construed the phrase "operation of a motor vehicle" in this statute too narrowly. We are not persuaded.

Although *Colangelo* concluded that § 31-293a should not be construed to contain an implied "special hazards" limitation, our Supreme Court did not purport to read out of the statute its express requirement of proof of "operation of a motor vehicle" as a condition for an injured employee's right to recovery from a fellow employee. The court referred to this requirement both in its description of *Dias* v. *Adams*, supra, 189 Conn. 354, and in the terms of its remand in its own case.

*Colangelo* cited, with apparent approval, *Dias'* holding that, as a matter of law, negligence in the operation of a shovel attached to a stationary backhoe "did not occur . . . in the operation of a motor vehicle, as § 31-293a requires for the exception allowing such a suit against a fellow employee." (Internal quotation marks omitted.) *Colangelo* v. *Heckelman*, supra, 279 Conn. 185–86. The court's citation is significant for this appeal because the facts in *Dias* closely resemble the facts of this case.

In *Dias*, the plaintiff's decedent and the defendant were installing sewer pipes on a public highway in Stratford. The defendant was operating a backhoe while the decedent was in a trench wrapping a chain around the bars of a steel box which the backhoe was to remove from the trench. The decedent suffered fatal injuries

when he was struck by a shovel that was attached to the backhoe. *Dias* v. *Adams*, supra, 189 Conn. 356.

"The backhoe was a self-propelled machine which used a diesel engine as its energy source both for locomotion and for movement of the boom to which the shovel or 'bucket' was attached. It moved, not on rubber-tired wheels, but on two continuous metal treaded belts. The controls were situated in the cab of the backhoe, and the same levers which controlled its locomotion could also be used to operate the shovel once the operator manipulated a certain valve to transfer the power of the engine from the treads to the boom. *The shovel could not be operated while the backhoe was in motion. At the time of the accident the operator had moved the valve into the proper position for operation of the shovel.*" (Emphasis added.) Id.

Even though, in *Dias*, the controls that operated the shovel on the backhoe were an integral part of the vehicle, and not, as in our case, situated outside of the cab of the truck, the Supreme Court held in *Dias* that § 31-293a did not apply. "In the case before us it is clear that, when the mishap took place, the defendant was doing nothing related to driving or moving the vehicle itself, which had been immobilized by switching the power from the treads to the boom. He was engaged only in operating the shovel. His negligence, which the jury found to have caused the accident, did not occur, therefore, in the operation of a motor vehicle, as § 31-293a requires for the exception allowing such a suit against a fellow employee." Id., 358.

We recognize that, as a result of the enactment of Public Acts 1983, No. 83-297, § 31-293a now excludes backhoes from the class of motor vehicles that may give rise to liability "if the claimed injury involving such equipment occurred at the worksite . . . ." General Statutes § 31-293a. We are nonetheless persuaded that,

as the trial court held, for vehicles such as the garbage truck in this case, *Dias* continues to illuminate the meaning of "operation of a motor vehicle" in § 31-293a. As in *Dias*, it is telling that the motor vehicle in question "could not be operated" while the hydraulic system was in motion. Also as in *Dias*, "[at] the time of the accident, the operator had [engaged the hydraulic system to place it] into the proper position for [its] operation . . . ." *Dias* v. *Adams*, supra, 189 Conn. 356.

We also note that, in *Colangelo*, after having reversed the trial court's judgment on the basis of special hazards associated with that injured plaintiff's employment, our Supreme Court did not direct the entry of a verdict in the plaintiff's favor. Instead, the court remanded the case to the trial court for a determination, *as a matter of law*, of whether the injured employee had met his burden of demonstrating that his injury was caused by the defendant's "operation of the motor vehicle" involved in the accident. *Colangelo* v. *Heckelman*, supra, 279 Conn. 193–94.

At the very least, the Supreme Court's remand in *Colangelo* confirms that there is a distinction between a "special hazards" analysis of § 31-293a and an analysis of what constitutes "the operation of a motor vehicle" under that section. Contrary to the plaintiff's claim in this case, the Supreme Court's elimination of one limitation on the statutory exception does not imply the elimination of the other. Indeed, the court expressly recognized that such analyses involved alternate claims. Id., 194 n.16.

In this respect, the factual predicate for the remand in *Colangelo* is illuminating. The Supreme Court described the alleged facts as follows. "On February 21, 2001, the plaintiff and the defendant were employed as automotive technicians by Torrington Honda, a car dealership in Torrington. On that day, the plaintiff and the defendant were assigned to conduct a '30 point' inspection

of a 2001 Honda Accord. The defendant, who was responsible for inspecting the interior of the vehicle, drove it into a service bay, while the plaintiff, who was responsible for inspecting the exterior, waited inside the bay. The vehicle came to rest on a skid plate designed to prevent the vehicle from moving forward. The engine remained running with the transmission in neutral, and the emergency brake was not engaged. Shortly after the inspection commenced, and just as the plaintiff was raising the hood of the vehicle to check the engine fluids, the vehicle lurched forward, pinning the plaintiff, who had been standing in front of the vehicle, between the vehicle and a workbench located against the back wall of the garage. As a result of the accident, the plaintiff sustained injuries to both knees, requiring multiple surgeries." Id., 179–80.

The claim for recovery under § 31-293a with respect to the material facts alleged in *Colangelo* demonstrates the weakness of the plaintiff's claim under the material facts that the court properly found to be undisputed in this case. Even though the vehicles involved in the two accidents were both motor vehicles for the purposes of § 31-293a, in this case, the maxibrakes were engaged, and the plaintiff was injured as the result of the movement of an external hopper rather than as the result of the lurching of the motor vehicle itself.

In sum, we conclude that the trial court properly concluded that the defendant was entitled to summary judgment on the plaintiff's claim of injuries arising out of the defendant's negligent operation of a motor vehicle. Even if proven, the plaintiff's factual allegations did not suffice to establish that he was injured as a result of the defendant's "operation of a motor vehicle." He was, therefore, not entitled to pursue a negligence claim against his fellow employee under § 31-293a.

The judgment is affirmed.

In this opinion the judges concurred.